(No. 11625.—Judgment modified and affirmed.)

THE CHICAGO AND INTERURBAN TRACTION COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 7, 1918.*

1. WORKMEN'S COMPENSATION—*when compensation may be awarded on basis of entire earnings of employee although part of wages are paid by third party.* Where a motorman for an interurban traction company is killed in a collision, compensation may be recovered from the traction company, under section 7 of the Workmen's Compensation act, on the basis of the employee's entire annual earnings, although part of said wages are paid by a city railway company in pursuance of its contract with the traction company to furnish employees while the traction cars are operating within the city.

2. SAME—*installments draw interest after the award is made.* After an award is made under the Workmen's Compensation act the installments draw interest at the rate of five per cent from the date of the award or from the time they subsequently become due.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

BUSBY, WEBER & MILLER, and ARTHUR A. ANDERSON, for plaintiff in error.

SONNENSCHEIN, BERKSON & LAUTMANN, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This writ of error is brought to review a judgment of the circuit court of Cook county confirming an award by the Industrial Board against the plaintiff in error of compensation for the death of Louis Bockstahler, who was killed on December 28, 1915, in a collision of two cars of the plaintiff in error on its railway near Crete, Illinois. He was at the time, and had been for several years, employed by the plaintiff in error as a motorman. There is no question as to the liability of the plaintiff in error, the only dispute being as to the amount of it.

The plaintiff in error operates an interurban electric railway between Kankakee and Chicago. It does not operate in the city of Chicago, but at One Hundred and Nineteenth street,—the boundary line,—connects with the lines of the Chicago City Railway Company, which operates a system of street railways in the city of Chicago but does not operate outside the city. The plaintiff in error used the tracks of the Chicago City Railway Company within the city of Chicago under a written agreement between the two companies, whereby it was provided that the interurban cars operated by the interurban company while upon the lines and terminals of the street railway company should be operated exclusively by conductors and motormen and other employees of the street railway company, which should collect and retain full fare from all passengers carried on the interurban cars over any of the lines of the street railway company within the city limits of Chicago and should bear and pay the total expense of operating such cars within the city limits of Chicago, including the wages of conductors and motormen and other employees on such cars and the furnishing of electrical power, but the cars were to be supplied, maintained and repaired by and at the expense of the interurban company. Separate fare registers were also required for recording the fares collected within and outside

the city limits of Chicago. The interurban company runs its cars from Kankakee to Sixty-third and Halsted streets, in Chicago, and back, and the deceased made a round trip daily. Each car has two cash registers,—one for fares collected south of One Hundred and Nineteenth street, the other for fares collected north of that street. A separate account is kept of moneys collected north and south of One Hundred and Nineteenth street, and the money is kept separate and is turned over in separate envelopes to the paymaster and cashier of the plaintiff in error at Eighty-eighth street. A separate account is kept of all transactions north and south of One Hundred and Nineteenth street, and accidents happening north of One Hundred and Nineteenth street are reported to the city railway company. A trip-sheet is made out each day to the city railway company showing fares collected and time spent on the lines north of One Hundred and Nineteenth street. A bulletin was posted on the bulletin board in the barns of the interurban company, where the deceased had to look to find his runs in 1912 while he was in its employ, stating that after March 1, 1912, that portion of the plaintiff in error's lines north of One Hundred and Nineteenth street would be operated by the Chicago City Railway Company as a part of its system. The deceased was employed by the interurban company and wore its uniform. He was paid by the hour, and each pay day received from the paymaster of the interurban company his pay in a check for the amount earned on the lines of the interurban company and in cash inclosed in a sealed envelope for the amount earned on the lines of the city railway company. He received as wages for the year preceding his death $1067.21,—$773.64 from the interurban company and $293.57 from the city railway company. The award made was for $3500, payable in semi-monthly installments, while the plaintiff in error claims it should have been for $3094.56 only, being four times the amount of wages received from it, and that the amount re-

ceived from the city railway company should not be taken into account.

The deceased left a widow and children, in which case section 7 of the Workmen's Compensation act provides that the amount of compensation shall be four times the annual earnings of the employee, but not less than $1650 nor more than $3500. Section 10 provides that the compensation shall be computed on the basis of the annual earnings which the injured person received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

It is the contention of the plaintiff in error that the deceased, while operating its cars over the lines of the city railway company, was in the employ of that company, and that the wages earned in that employment cannot be regarded as part of the annual earnings which he received as salary, wages or earnings in the employ of the same employer continuously during the year preceding his death. The deceased had but one contract of employment, and that was with the plaintiff in error. Under this contract he operated the cars of the plaintiff in error as a motorman, whether on its own tracks or those of the city railway company. He was not a party to the contract between the two companies, though it may be assumed that he had notice that the tracks north of One Hundred and Nineteenth street were a part of the system of the Chicago City Railway Company, and that that company paid his wages, and those of the other motormen, conductors and employees of the interurban company, for the time they were operating cars north of One Hundred and Nineteenth street. This, however, did not alter his relation to the interurban company. It was still his employer and he was its employee. When he crossed One Hundred and Nineteenth street to the north he did so by reason of his employment by the plaintiff in error, and he operated its cars by reason of the same employment, though for the benefit and under the control of

the city railway company.  He had no contract of employment with the city railway company.  The contract between the two companies required the interurban cars, while upon the lines of the city railway company, to be operated by the employees of that company at its own expense.  This was not done but the city railway company permitted the cars to be operated under its control by the employees of the interurban company, whom it paid in the manner which has been stated.

We are referred to the case of *Peterson* v. *Chicago, Rock Island and Pacific Railroad Co.* 205 U. S. 364, as sustaining the claim of plaintiff in error that the deceased, while operating his car over the lines of the city railway company, was in its employ and not in the employ of the interurban company.  In that case the lines of the Chicago, Rock Island and Pacific Railroad Company, a corporation of the State of Illinois, and the Chicago, Rock Island and Gulf Railroad Company, a corporation of the State of Texas, connected at the boundary line of the State of Texas, and passenger trains were operated on both sides of the State line on the tracks of both companies by the same crews without stopping at the State line.  The employees operating these trains were under the control of the Gulf Company while working south of the State line and were carried on its pay-roll and paid by it for such work, and were under the control of the Pacific Company while working north of the State line and were carried on its pay-roll and paid by it for such work.  Suit was begun in Texas against the Chicago, Rock Island and Pacific Railroad Company, and a summons was served in that State upon a conductor living there who was employed in operating the trains running across the State line.  On motion to quash the service it was held that the conductors, when they crossed the Texas line, became servants and agents of the Gulf Company and were not the agents of the Pacific Company doing the business of the company in Texas; that the Pacific Company was not do-

ing business in the State of Texas, and that the attempted service was not upon the agents of that company transacting its business in that State in such a sense as to give jurisdiction by service upon them.

It may be that the plaintiff in error was not doing business in the city of Chicago so as to be bound by service upon its employees there. Its employees there were for the time being the agents and servants of the city railway company to the extent that they were doing its work and subject to its orders in that work. Their contract of employment with the plaintiff in error did not, however, cease when they crossed the city line. The cars were still interurban cars and they were still interurban employees, though the city railway company had contracted, not with them but with their employer, to pay their wages. It is our conclusion that the deceased was continuously in the employment of the same employer during the year.

The circuit court, in addition to confirming the award, allowed on all the payments which had accrued, interest from the date of decedent's death. The statute does not authorize the allowance of interest prior to the making of an award under the Workmen's Compensation act, but under the Interest act the award itself bears five per cent interest on the amount due at the date of the award from that date and on the subsequent installments after they respectively become due. The judgment will be modified so as to reduce the amount from $782.75 to $763.35, which includes all installments to May 29, 1917, when the judgment was rendered, with interest thereon to that date. Subsequent installments will bear interest from the time they respectively become due. So modified the judgment will be affirmed, each party to pay its or his own costs in this court.

*Modified and affirmed.*