CHAUNCEY A. CROSBY, Appellant, v. NEVADA INDUSTRIAL COMMISSION, Respondent.

No. 3919

March 22, 1957                              308 P.2d 60

(Rehearing denied April 23, 1957.)

*Charlotte Hunter* and *Sidney Fox* and *Margaret Faires Baily,* all of Reno, for Appellant.

*Richard R. Hanna,* of Carson City, for Respondent.

## OPINION

By the Court, BADT, C. J.:

This is an appeal in an industrial insurance case, in which the district court, in appellant's action following the findings and orders of the respondent Commission and the Medical Referee Board, in effect terminated appellant's status of temporary total disability, gave him a permanent partial disability rating and fixed such permanent partial disability at 60 percent. The parties are in agreement that but two issues are involved in this appeal, (1) whether or not plaintiff should remain on temporary status and be afforded further medical treatment, particularly a third operation, and (2) whether the court was in error in fixing his permanent partial disability rating at 60 percent rather than, as contended by appellant, as a total permanent disability. Thus we see that, despite the extensive argument of appellant concerning certain procedural aspects of the trial before the district court and despite extensive exposition of the parties in their written briefs and oral argument of their respective constructions of sundry sections of the Nevada Industrial Insurance Act, we are confronted in the main with questions of fact. This in turn confines our consideration to the determination of the question as to whether the two findings attacked by the appellant find substantial support in the evidence. Our conclusion

is that the Commission's termination of appellant's temporary total disability status and the court's finding that such termination was proper are substantially supported and that the judgment in this respect must be affirmed. We have, however, further concluded that the fixing of his permanent status as one of 60 percent disability was too narrowly based upon his bodily disability without respect to his incapacity to work or to find employment and that this phase of the case must, for such reason, be remanded for further consideration, findings and judgment.

On March 15, 1950 appellant suffered a back injury while working as a shipping and receiving clerk for Gray Reid Wright Company at Reno. Attempts to correct the injury by therapy treatments from Dr. Walker failed, and Dr. James Thom, on behalf of the Nevada Industrial Commission sent him to Dr. Ernest Mack, a neuro-surgeon who placed him in a back brace. On July 11, 1951, Dr. John C. Becker, an orthopedist, was associated. Dr. Becker operated on June 23, 1951 and removed a ruptured intervertebral disc, and, with Dr. Mack assisting, attempted to do a fusion, with appellant remaining in the hospital until August 1951 and later being treated as an outpatient until 1952, when, still suffering great pain and incapacitated, and it developing that the fusion had been unsuccessful, a second fusion was attempted in March 1952. He was again released in July 1952 and received attention and treatment as an outpatient. The second fusion operation likewise proved unsuccessful and the possibility of a third operation was discussed. On June 1, 1953 Dr. Thom, chief medical advisor of the Commission, recommended that appellant's temporary total disability status be terminated and that he be given a permanent partial disability rating. The Commission followed the recommendation and offered a settlement on the basis of a 50 percent permanent partial disability. Appellant rejected the offer and the matter was referred to the Medical Referee Board, which increased the partial disability rating to 60 percent. Appellant rejected this offer and in January 1954 commenced the instant action in the district court.

NRS 616.025 defines "accident benefits" as used in the Nevada Industrial Insurance Act to mean medical, surgical, hospital, or other treatment, nursing, medicine, medical, and surgical supplies, crutches and apparatus, including artificial members. Section 616.515, being sec. 58(a) of the act reads: "Every injured employee within the provisions of this chapter shall be entitled to receive, and shall receive promptly, such accident benefits as may reasonably be required at the time of the injury and within 6 months thereafter, which may be further extended by the commission for an additional period of 1 year." NRS 616.575 provides that disability caused by an injury to the spine resulting in permanent and complete paralysis of both legs or arms, or one leg or one arm, "shall be deemed total and permanent. * * * The enumeration * * * is not exclusive, and in all other cases permanent total disability shall be determined by the commission in accordance with the facts presented." NRS 616.605 provides for determination of the percentage of disability to the total disability and how it should be computed. It further provides: "In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of the injury. * * *" NRS 616.625 permits the Commission, in its discretion, to allow the conversion of the compensation into a lump sum payment.

Using the method prescribed by the act and under the Commission's rules and regulations, the Commission converted the compensation, under its finding of 60 percent disability, into a lump sum settlement of $4790, which the appellant rejected.

1. We deal first with the court's approval of the Commission's determination that the period of plaintiff's temporary total disability was at an end and the court's finding that the Commission was not obligated to continue to furnish additional hospital, medical, surgical and other benefits. Dr. Becker and Dr. Mack were called as witnesses by the plaintiff, and Dr. Thom by the

defendant. All of these witnesses testified at considerable length on both direct and cross examination, and we are concerned with the question as to whether the court was justified in concluding that appellant's condition could not reasonably be expected to yield to further operation or treatment after the failure of the second fusion operation. Dr. Thom, when asked to explain his opinion as to the possibility of improvement by a third operation, testified in part: "I have some very definite opinions and they are based on the observation of this 12 years, plus the observation of my own patients throughout some 35 years, that we almost never do a third stabilization operation. Just recently I had to have a third stabilization operation done upon one patient who had complete lack of continuity of the spine. Now that's a most unusual situation. That's the only one in my 35 years experience where I on my own patients asked the neuro-surgeon and the orthopedist to do a disc and a third fusion for me. This represents my observation * * * that during my 12 years with the Industrial Commission we have had more than 300 back operations, discs and stabilization * * * and as I recall only one of those has been done a third time * * * the chances of a third operation being successful are slight * * * There is a great possibility that a third operation might further disable Mr. Crosby or increase his permanent disability * * * he was treated to a place where he became stationary and nobody had anything more to offer in the way of active treatment at that time. When I say treatment, I mean active surgical treatment." Dr. Mack testified: "The thought of a third operation on Mr. Crosby to the surgeon is devastating. Mr. Crosby is a very difficult man to work on because of his stature and his size. [240 pounds] He also presents a tremendously complicated technical procedure. He also presents to us who work— obviously when we undertake one of these things it is with the thought that we will ultimately be successful and have a well patient or a reasonably well one, and we must approach this problem with a full understanding that we have only got a—we'll say less than a 50 percent

chance of being successful. That's why we would not approach it—there's an old saying about this kind of patient in medical practice, that this is the kind of patient to send to your worst competitor." It is true that Dr. Becker discussed a newer type of procedure involving bone block between the vertebral bodies in which successful results had been obtained, and it is true that Dr. Mack testified to cases on record where people had more than two fusion attempts with an ultimate successful result, and that he had told appellant that it was not unreasonable to try again and it is true that Dr. Thom frankly conceded that the Commission did not think that appellant was well, "or we'd never have given him a partial, permanent disability rating." It is likewise true that Dr. Becker and Dr. Mack accorded a 50 percent chance of success from a third operation. With whatever persuasiveness these concessions may have been addressed to the trial court, there was committed to that court the duty of arriving at a conclusion. In this case, as in all others, appellant's contentions must yield to the rule that we shall not disturb the court's finding where it finds substantial support in the record. Its finding of termination of status of total temporary disability was in recognition of the rule cited by both parties. "Temporary as distinguished from permanent disability has been defined as 'a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit.' " 58 A.J. 779, Workmen's Compensation, Sec. 283. We must then reject appellant's assignment of error on this point.

2. It has been noted that the Commission first fixed appellant's status as that of total temporary disability. Upon terminating his temporary status the Commission also changed his disability from total disability to 60 percent partial disability. It was noted in argument that our statute, above quoted, deems an injury to the spine resulting in permanent and complete paralysis of both legs or arms to be total and permanent. The implication of this argument was that the present injury to appellant's spine had not so resulted, and could not, therefore,

be considered total. The statute, however, goes on to provide that the enumeration given is not taken as exclusive and that in all other cases permanent total disability shall be determined by the Commission in accordance with the facts presented, and that in determining the percentage of disability, consideration be given to the occupation of the injured employee and to the nature of the physical injury. The opinion of the learned trial judge notes that the Commission fixed the percentage of disability "upon a bodily basis," notes the plaintiff's contention that such basis is unwarranted but feels that "the Commission took into consideration" the facts mentioned in the statute and referred to above. After then expressing the opinion that the award should stand because of the court's feeling that the Commission did take into consideration the other elements set forth in the statute, the court then proceeds to its own finding approving the 60 percent disability as found, because "there is testimony that plaintiff has worked and there is some medical testimony that he could perform some work." In our opinion this is not a finding of the court that there is a 60 percent disability and is not such a finding as would support a percentage of disability at any specific point between 60 percent and 100 percent. The actual finding of the court in this regard is simply "that the Medical Board determined the percentage of permanent partial disability sustained by the plaintiff as aforesaid to be 60 percent upon a body basis; that the plaintiff sustained a permanent partial disability of 60 percent upon a body basis * * *." The record is replete with testimony as to plaintiff's inability to do any work or to find any employment and nothing appears to the contrary. Dr. Mack testified: "[H]e's got a tremendous disability * * * his status physically at this time [time of the trial] compared to his status at the time of the first operation is relatively unchanged." Dr. Becker testified that appellant's disability continued (after the second and last unsuccessful fusion operation) as to such acts as "getting in and out of a car, doing odd jobs around the family home, and these are

not any labor demanding jobs. * * *" He further stated: "If his disability is 50 to 60 percent, he certainly cannot do labor." It is true that Dr. Thom, operating under what he says is the practice of the insurance companies, in concluding that the case should be "finaled," did indeed conclude that appellant's permanent disability was "partial." It is significant, however, that he qualified his use of the term "partial." "I had concluded that *he had a high degree* of partial permanent disability."

In an early annotation in 33 A.L.R. 115 under title "Workmen's Compensation: Statutory phrase 'incapacity to work' or the like, as including inability to obtain work following an injury," are listed a great many cases in the American and English courts in which such terms as "incapacity for work," "disability," "power to earn," "inability to procure work" etc. are defined and explained. The actual words used in the different statutory provisions do indeed vary, but the conclusions reached are clear irrespective of the particular words used in the statutes. This is illustrated by the remark contained in the opinion in Kuhnle v. Department of Labor and Industries, 15 Wash.2d 427, 120 P.2d 1003, 1006: "The courts have found great difficulty in defining what is meant by incapacity to perform any work at any gainful occupation, *and equivalent expressions* used in workmen's compensation acts. They agree that they do not mean that the workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live. * * * The purpose of the act is to insure against loss of wage earning capacity. A workman's wage earning capacity may be completely destroyed, though he still has some capacity to perform minor tasks. To quote from the opinion of the Supreme Court of Minnesota in Green v. Schmahl, 202 Minn. 254, 256, 278 NW. 157, 158: 'Furthermore, and important, sporadic competence, occasional, intermittent, and much limited capacity to earn something somehow, does not reduce what is otherwise total to a partial disability.' " (Emphasis supplied.) It is unnecessary even to cite the cases in which the loss of an arm or the loss of a leg or

the disfigurement of the face, resulting in inability to obtain employment, has been regarded as total disability, despite the fact that total bodily disability was by no means present. With respect to the many cases cited in the annotation mentioned, which considered the statutory phrase "incapacity for work" *or the like,* it should be noted that the great majority do indeed consider the particular phrase "incapacity for work." Several, however, discuss the statutory word "disability," which is the word used in our own statute. If there is a distinction, it is a very fine one. Webster's New International Dictionary defines disability, among other things, as "absence of competent physical fitness," and defines incapacity as "lack of physical power, inability, incapability." For the purposes of this case at least, we may say that the several expressions used are interchangeable, and that the court's finding and conclusion (following the finding and conclusion of the Commission) of a 60 percent disability, restricted as they appear to have been to a bodily disability, and without consideration of inability to find work, incapacity for work, lack of earning power, was error.

It appears that appellant earned some money as pastor of his church and as fees for performance of marriage ceremonies. It is not for this court to say to what extent, if at all (see rule as to total disability despite occasional intermittent and limited earnings as laid down in Kuhnle v. Department of Labor and Industries, 15 Wash. 2d 427, 120 P.2d 1003; Gramolini's Case, 328 Mass. 86, 101 N.E. 2d 750; New York Indemnity Co. v. Industrial Commission, 86 Colo. 364, 281 P. 740; Trinity Universal Ins. Co. v. Rose, Tex. Civ. App, 217 S.W. 2d 425; Ball v. Hunt, 81 King's Bench Div. (N.S.) 782, and similar cases), appellant's earnings as pastor of his church and from marriage fees served to reduce what appears otherwise to be a total disability resulting from the accident and resulting from the failure of the Commission's treatment to remedy and cure his condition.

That function must be performed by the district court.

That part of the judgment finding that his status of temporary total disability had terminated is affirmed. That part of the judgment allowing him the lump sum of $4790 on a basis of 60 percent disability is reversed, and the case is remanded to the district court for further proceedings to determine the percentage of his disability consistently with this opinion, and, using the same lump sum basis, to enter judgment accordingly. Appellant will recover his costs on this appeal.

EATHER and MERRILL, JJ., concur.