NEVADA INDUSTRIAL COMMISSION, Appellant,
v. MAMIE MAY FROSIG, a Widow, Respondent.

No. 4056

June 16, 1958.                    326 P.2d 736.

Paul D. Laxalt, of Carson City, for Appellant.

William J. Raggio, of Reno, for Respondent.

# OPINION

Per Curiam:

This appeal is taken by the Nevada Industrial Commission from judgment for death benefits in favor of the widow of a deceased workman. The sole question upon this appeal is whether the record provides support for the court's finding that the workman's death had resulted from occupational disease.

The widow contends that death resulted from silicosis as a result of years of exposure to silica dust in the course of employment by a brick manufacturing company.

Silicosis is specified in the Industrial Insurance Act as

an occupational disease for which compensation is payable. It is defined as follows: NRS 617.140. " 'Silicosis' shall mean a disease of the lungs caused by breathing silica dust (silicon dioxide) producing fibrous nodules, distributed through the lungs and demonstrated by X-ray examination or by autopsy."

Compensation for occupational disease is not, of course, intended to provide a death benefit for everyone who, during his lifetime, has exposed himself to an industrial hazard. It is intended to benefit those who died as a result of the industrial hazard. Two questions are thus presented: (1) Whether silicosis as defined by statute existed; and (2) Whether death resulted therefrom. Although evidence upon these issues is uncertain there is testimony to support the court's findings in both respects and to justify the manner in which the court resolved the uncertainty.

As to the existence of silicosis as defined by NRS 617.140, the appellant contends that the statutory language, "producing fibrous nodules," must be interpreted to mean that within the meaning of the legislature silicosis does not exist unless the fibrous nodules are produced in the lungs. Assuming the position of the appellant to be correct, we feel that there is sufficient testimony in the record to substantiate a finding that silicosis existed here in the statutory sense. We therefore find it unnecessary to decide this issue raised by the appellant.

The doctor who performed the autopsy testified in part as follows:

"Q. Was there any evidence of silica or silicon dioxide in the lungs?

"A. It was my opinion that there was a considerable amount of silica throughout the lungs. * * *

"Q. And there was, as a result of your examination, evidence of fibrosity in the lungs?

"A. Yes."

This doctor also testified that the most probable immediate cause of death, bronchial pneumonia, was in his opinion "secondary to the severe emphysema and silicosis of the lungs."

A second doctor testified that death resulted from bronchial pneumonia and that silicosis was a contributing cause of the pneumonia, explaining that "[As] a terminal stage [silicosis patients] die not of silicosis but some secondary infection, most commonly bronchial pneumonia."

There is evidence, therefore, from which the court was justified in concluding that silicosis as defined by statute existed as established by autopsy, and that it was a contributing cause of death.

Affirmed.