# NEVADA INDUSTRIAL COMMISSION, Appellant, v. PHIL W. O'HARE, Respondent.

No. 4239

March 10, 1960                    349 P.2d 1058

*Paul D. Laxalt* and *William J. Crowell,* of Carson City, for Appellant.

*Lohse & Fry* and *Margaret Faires Baily,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

This is an appeal by Nevada Industrial Commission from a judgment of the court below awarding to Phil W. O'Hare a judgment for accrued compensation and for continuing compensation and for unpaid medical and hospital expenses, after the commission, pursuant to recommendations of the medical board, had terminated O'Hare's compensation.

On December 4, 1955 plaintiff was employed as a tractor operator by Utah Construction Company and while engaged in said employment at the Hawthorne Naval Ammunition Depot at Hawthorne, Nevada, was injured after climbing off a caterpillar tractor and sustained a sprained left leg. As a result of said accident he was hospitalized and for a period of time, from December 12, 1955 to May 24, 1956, received weekly compensation from the commission. Further benefits were refused and the commission disclaimed further liability. Both the employer and the employee were subject to the provisions of the Nevada Industrial Insurance Act. NRS Chap. 616. These facts are admitted by the pleadings. It is not contended that the accident, for whose results he was compensated up to May 24, 1956, did not arise out of and in the course of his employment.

As an affirmative defense, the commission asserted that prior to July 27, 1956 O'Hare's claim before the commission had been referred to the medical board for determination, and that such board had determined that any disability suffered by O'Hare after May 24, 1956 was not the result of injury sustained on December 4, 1955, but was caused by a disease not connected in any way with O'Hare's employment; that such findings and

determination of the medical board were final and binding upon the commission. A copy of the findings and determination signed by two members of the three-man medical board was attached to the answer as an exhibit. It is recited in full in the margin.[1]

The case was tried to the district court without a jury. O'Hare and one of the doctors who had attended him over a long period and who had prescribed a course of treatment, both in and out of the hospital, testified in support of the plaintiff. One physician testified on behalf of the commission. Neither of the two physicians who signed the findings and decision of the medical board testified. No explanation appears why the third member of the medical board did not sign that board's decision, or what his position was with reference thereto.

It appeared from the evidence that O'Hare was suffering from thrombophlebitis caused by the injury described. Thrombophlebitis was defined as the development of a blood clot within a vein, which therefore obstructs the flow of blood through the vein. Though the commission accepts the conclusion that O'Hare still suffers from a medical condition, it contends that the testimony of the two expert witnesses who testified supported the conclusions of the medical board that

---

[1]"July 27, 1956.

"At a recent meeting of the Board, Mr. O'Hare appeared to present evidence in his rejection of claim for continuation of care.

"The entire history, physical, treatment, hospitalization and total care of Mr. O'Hare was reviewed. Then Mr. O'Hare was called in for discussion as to his complaints and his side of the story.

"In summarizing, we could state that Mr. O'Hare did have a primary phlebothrombosis which was accepted by the commission in good faith and treated until we felt that this traumatic thrombosis was well taken care of.

"Unfortunately, in the investigation of his thrombosis and with the Doctors involved, Dr. Peterson, Dr. Duxbury, it was felt that he had a background for these thromboses on the basis of early arterial and venous disease, such as B[u]erger's disease, this could not be caused by his employment and it was felt, since the Commission had taken care of him completely during the incident relative to his work; that they could not take care of him for the B[u]erger's disease and for this to be accepted as an Industrial case in the future. If this accident had been the cause for the B[u]erger's, then it would be their responsibility for continuing treatment."

O'Hare had a background for the thrombosis on the basis of pre-existing arterial and venous disease, such as Buerger's disease, known as thromboangiitis obliterans, which was not aggravated or accelerated by the accident. It therefore asserts error in the lack of evidence supporting a finding of any causal connection between O'Hare's employment and Buerger's disease or the aggravation or acceleration of Buerger's disease resulting from his employment.

(1) We have read with care the testimony of the two expert witnesses and find the same inconclusive, without convincing effect, attended by considerable confusion, and in some respects contradictory. For an enlightening discussion of Buerger's disease, the aggravation and acceleration thereof, the obscure nature of its cause, and its compensability under Workmen's Compensation statutes, see Quaker Oats Co. v. Industrial Commission, 414 Ill. 326, 111 N.E.2d 351, and Paull v. Preston Theatres Corporation, 63 Idaho 594, 124 P.2d 562. We are unable to say that the court's finding was not supported by substantial evidence, or that the evidence compelled a finding that O'Hare's condition was the result of a preexisting Buerger's disease. See Nevada Industrial Commission v. Frosig, 74 Nev. 209, 326 P.2d 736. We conclude that the assignment of the insufficiency of the evidence is without merit.

(2) What we conceive to be the commission's chief assignment of error is the failure of the court to find, as a matter of law, that the finding and decision of the medical referee board was final and obligatory upon the commission, in the absence of showing that the board's finding was arbitrary, capricious, or in abuse of its discretion.

This court has heretofore defined the nature of its review of the findings and decisions of administrative boards. Nevada Tax Commission v. Hicks, 73 Nev. 115, 310 P.2d 852. See also State ex rel. Grimes v. Board of Com. of Las Vegas, 53 Nev. 364, 1 P.2d 570; Dunn v. Nevada Tax Commission, 67 Nev. 173, 216 P.2d 985. We

have recognized the finality of administrative determinations of administrative commissions in the exercise of the commission's judgment based upon its specialized experience and knowledge. This evolved from the growing appreciation of the undesirability of trying de novo in the courts appeals from the rulings and decisions of the commission. We recognized the desirability of having the commission or administrative tribunal assume a real responsibility for weighing and considering the facts in the fields where it had peculiar competence. We repeatedly referred to such experience and skill acquired by the administrative tribunals in their respective spheres. This we may again confirm with reference to administrative determinations, at the same time recognizing that the final action and judgment of the administrative tribunal made in the exercise of a quasi-judicial function is subject to judicial review. Oliver v. Spitz, 76 Nev. 5, 348 P.2d 158. Where the factual determinations are made after such hearing and notice necessarily provided to satisfy the requirements of due process, the absence of compliance with such provisions may undoubtedly be the subject of judicial inquiry. Nevada Tax Commission v. Hicks, supra.

In the instant case the statutory pronouncement that the finding by the medical board or a majority of the members thereof shall be final and binding on the commission (NRS 616.190(2)) is linked with a further statutory requirement. This is that the medical board's findings, conclusions, and recommendations to the commission shall follow the board's "full, complete and thorough examination [conceded by appellant to require a physical examination] of the injured employee" after notice to the employee of the time and place set for examination and investigation into the medical questions involved, as well as the determination of the extent of disability. (NRS 616.540(2)) The medical board made no physical examination of O'Hare. It is impossible logically to divorce the binding effect of the medical board's finding and decision from the statutory requirement for notice and for a full, complete and thorough physical examination. The binding effect of the board's

finding and decision disappears from the picture in the absence of compliance with those mandatory requirements which the legislature in its wisdom thought proper to impose.

The assignment of error in the court's failure to find that the medical board's findings and recommendations were binding upon the commission, and thus binding upon the court, must, under the circumstances, be held to be without merit.

(3) In further response to the contention of appellant that the decision of the medical board was obligatory upon the commission, respondent urges that the report signed by the two doctors is not a report by the medical board as such; that the provisions of NRS 616.540(3)[2] have not been complied with; that it cannot be determined from the report whether all of the members of the board were in agreement; that if the three members were, as a matter of fact, not in agreement, the requirement of the section that "the members of the medical board shall submit separate and individual reports to the commission" was not complied with. By reason of our holding above, it is not necessary to pass upon this contention, but we cannot say that it is without merit. Members of the medical board are physicians, not lawyers, and may not in fairness be forced to assume the task of legal analysis of applicable statutes and the possible results of failure of strict compliance. However, the legislature has furnished the commission with counsel, the utilization of whose advice on analysis of statutory requirements might save expensive litigation to all parties concerned.

(4) In affirming the judgment herein, it is not intended that the district court's determination of the respondent's present right to payments under the act be res judicata (either with respect to continued payments in the future, or with respect to its determination

---

[2]NRS 616.540 "3. Should the medical board not be in agreement as to the findings, conclusions and recommendations, the members of the medical board shall submit separate and individual reports to the commission."

that plaintiff's disability and incapacity is permanent and total) as to any subsequent action that may be taken by the medical board or by the commission in accordance with the provisions of NRS 616.535(1)[3] or NRS 616.-540(1)[4] or NRS 616.190(2),[5] or other applicable provisions of the Nevada Industrial Insurance Act. The judgment is modified accordingly.

Subject to the last preceding paragraph, the judgment is affirmed with costs.

McNAMEE, C. J., and PIKE, J., concur.

[3]616.535 "1. Any employee entitled to receive compensation under this chapter is required, if requested by the commission, to submit himself for medical examination at a time and from time to time at a place reasonably convenient for the employee, and as may be provided by the rules of the commission."

[4]616.540 "1. If on a claim for compensation by an injured employee any medical question or the extent of disability of an injured employee shall be in controversy, the commission shall refer the case to the medical board."

[5]616.190 "2. The jurisdiction of the medical board shall be limited solely to the consideration and determination of medical questions and the extent of disability of injured employees referred by the commission. * * *"