NEVADA INDUSTRIAL COMMISSION, AN AGENCY OF
THE STATE OF NEVADA, APPELLANT, *v.* WILLIAM H.
STRANGE, RESPONDENT.

No. 5354

February 28, 1968                    437 P.2d 873

*William J. Crowell,* of Carson City, for Appellant.

*Richard P. Wait* and *Roger L. Erickson,* of Reno, for
Respondent.

154

**O P I N I O N**

By the Court, MOWBRAY, J.:

Respondent fell from a ladder while attempting to install a sign at the candy counter at the Granada Theater in Reno, where he was then employed by United California Theaters, Inc.

As a result of the fall, respondent received disabling injuries to his back, including a severely ruptured and herniated intervertebral disc with blocking of the lumbosacral levels, massive protrusion of the disc, and a compression fracture of the first lumbar vertebral body. He was hospitalized for surgical repair including a partial hemilaminectomy and removal of an intervertebral disc. On the date of his accident he was earning $80 per week.

Respondent timely filed his claim for compensation with appellant, jurisdiction was assumed, and the Commission offered an award of 15 percent permanent partial disability or 15 months' disability at $100 per month, totaling $1,500, plus an additional award of 5 percent for loss of future earning capacity and other factors and considerations or 5 months at $100 per month, totaling $500, making a grand total award of $2,000.

He chose not to accept the award but instead commenced this action against appellant in the district court. A full hearing before the trial judge was conducted, evidence, both documentary and oral, was received, and at the conclusion of the trial the district judge filed a decision finding that respondent was entitled to the benefits of the Nevada Industrial Insurance Act and fixing his award in the sum of $9,900 with interest from date of judgment at the rate of 7 percent per annum.

The issues raised by the appeal may be grouped under three headings:

1. What is the precise duty of the trial court in proceedings of this nature? Is it a court of review? Is it bound by the findings of the Nevada Industrial Commission? Or are its powers the same as in any other original law suit—to hear and consider the evidence and make its own independent findings and an appropriate award based thereon?

2. Was there substantial evidence received to support the findings of the trial court and the award granted to respondent?

3. Should the trial court's judgment be modified to provide that the interest on the award run from the date respondent was terminated by appellant, rather than from the date of the entry of judgment in the trial court?

1. The law of Nevada has always been that proceedings such as the instant case are original in the district court. Our Legislature approved the Nevada Industrial Act on March 15, 1913.[1] By its terms, employers and employees in this State contribute to a fund from which employees incurring injuries during their employment are compensated by the Commission.

State ex rel. Brown v. Nev. Indus. Comm'n, 40 Nev. 220, 161 P. 516 (1916), was the first case of this court construing the Act. In Brown, this court clearly established that an aggrieved employee who was dissatisfied with the award of compensation granted by the Commission had the right to bring an original action in district court against the Commission and that the enforcement of that right in the district court involved a justiciable controversy over which our district courts have original jurisdiction as provided in the Nevada Constitution.

While in the Brown case the employee sought a writ of mandamus from this court directing the Commission to award him compensation in excess of the award he had received, this court, in denying his application for the writ on the grounds that he had a plain, speedy, and adequate remedy at law, held, at 225: "That there is a remedy at law against respondent upon a rejected claim of an employee, we think permits of no question. Suppose, for example, a claim is rejected by the commission upon the ground that the relation of employer and employee did not exist at the time of the accident, * * *. Again, if the commission should determine that the extent of the claimant's injuries are not as great as that asserted by the claimant, and the claimant is unwilling to accept the compensation which the commission determines he

[1]Stats. Nev. 1913, ch. 111.

is entitled to, the claimant is entitled to have the question of the extent of his injuries determined as a fact by a court of law. * * *

"In the administration of the important duties imposed upon the Nevada Industrial Commission, that commission will doubtless often be required, as it interprets its duty, to reject claims in whole or in part, and both upon questions of fact and law. If a claim is finally rejected *in toto,* that is the end of it so far as the commission is concerned, unless a judgment is obtained against the commission in a court of competent jurisdiction, in which event the judgment will have the force of an allowed claim. * * * A district court is the proper forum to determine the legality of his [employee's] claim, and, if a legal claim, the amount he is entitled to recover under the statute. If, after a judgment in the district court, either party is dissatisfied with such judgment, the remedy of appeal to this court is available.

"If the legislature had not adopted the statute under which petitioner claims compensation, he would, if he sought to enforce compensation from his employer, be compelled to institute his suit in the district court. It cannot, in reason, we think, be contended that a person entitled to compensation for personal injury has, by virtue of the statute, been granted any different remedy to establish his right to such compensation than that which before existed."

This court, in Dahlquist v. Nev. Indus. Comm'n, 46 Nev. 107, 119, 206 P. 197, 207 P. 1104 (1922), reaffirmed the holding of the Brown case, and among other things stated:

"Counsel seem to base their entire argument upon the theory that the case in the district court, wherein the judgment was rendered which was appealed to this court, was tried by that court de novo. Since the term 'de novo' means anew, it may be that, literally speaking, the trial in that court was de novo; but in legal parlance the term 'de novo' signifies that there had already been a trial before some tribunal, and that the trial de novo was not before a court upon an original hearing, but upon appeal, whereas this case was originally instituted in the district court. We are sure that learned counsel are well aware of the terms of section 1, art. 6, of our constitution, and of the holding in Ormsby County v. Kearney, 37 Nev. 314, 142 Pac. 803, and followed in V. L. & S. Co. v. District Court, 42 Nev. 1, 171 Pac. 166, wherein it was held that the legislature had no authority to create a tribunal with judicial powers, other than as provided in the section of the constitution mentioned, from which an appeal might be taken to the district court in this state.

"We have not been cited to any provision of the Workmen's Compensation Act (Stats. 1913, c. 111, as amended by Stats. 1915, c. 190, Stats. 1917, c. 233, and Stats. 1919, c. 176) authorizing an appeal from the commission to the court, nor do we understand that it is contended that there can be such an appeal. * * * There is absolutely no connection between the proceeding before the commission and that before this court, * * *. In the case before us the [trial] court reviewed nothing; it merely determined a suit *commenced* before it. There was *no connection between the proceedings before the commission and the [trial] court proceeding.*" Also, Provenzano v. Long, 64 Nev. 412, 183 P.2d 639 (1947); Nevada Indus. Comm'n v. Frosig, 74 Nev. 209, 326 P.2d 736 (1958).

It is to be particularly noted that this court in the Brown case decided that the legislative intent was to vest in the aggrieved employee his cause of action against the Commission, and held in the Dahlquist case that the proceeding before the district court was not a trial de novo but an original proceeding.

The Nevada Industrial Insurance Act contains no provisions for a judicial review. The reason is obvious. *There simply is nothing to review.* The only available procedure, as indicated in the cases cited above, is an original proceeding in the district court.

Appellant urges Nevada Indus. Comm'n v. O'Hare, 76 Nev. 107, 349 P.2d 1058 (1960), as authority for the proposition that the medical board's findings are binding on the Commission and therefore shall be binding on the trial court. The question was not directly presented to this court and was not decided by it, the language being dictum. The court did discuss the proper appellate procedure from a ruling of the Nevada Tax Commission[2] (rather than the Nevada Industrial Commission), but nevertheless said at 112:

"The assignment of error in the court's failure to find that the medical board's findings and recommendations were binding upon the commission, and thus binding upon the court, must, under the circumstances, be held to be without merit."

We reaffirm the holdings in Brown and Dahlquist, and any

[2]NRS 463.315(1). "Any person aggrieved by a final decision or order of the [Nevada Tax] commission made after hearing or rehearing by the commission pursuant to NRS 463.312, and whether or not a petition for rehearing was filed, may obtain a judicial review thereof in the district court of the county in which the petitioner resides or has his or its principal place of business."

indication to the contrary which may appear in the case of O'Hare is expressly disavowed.

The interpretation given to the Act of 1913 by this court in the Brown case that it was the legislative intent to vest in an aggrieved employee the right to bring an original action in the district court has received the tacit acquiescence of the Legislature for a period of 52 years. This can be construed in no other way than legislative approval of such an interpretation and is as effective as though the Legislature had expressly provided for such a procedure. It is certainly within the province and power of the Legislature to create rights and liabilities from which may grow justiciable controversies which may be enforced by original actions filed in the district court. This is precisely what the Brown case decided the Legislature had done in the Act of 1913.

2. The trial judge filed a written decision setting forth his reasons for his award to respondent. This was followed by findings of fact, conclusions of law, and an appropriate judgment. The trial judge, in his opinion, stated in part that "a fair appraisal of all of the foregoing [evidence] is that (1) All Doctors with perhaps one exception failed to give * * * significance to Dr. Mack's finding of 'some caudal contusion' at the L–5 S–1 level—which could account for and be consistent with Mr. Strange's persistant pain complaint; (2) Sufficient significance was not given to the October 6, 1964, 'temporary flare up of the old compression fracture which he has involving the first lumbar vertebral body' as reported by Dr. Neff, and resulting in Dr. Neff's opinion that 'the best treatment would consist of an application of a Taylor brace' which was done; * * *.

"The Court is of the opinion that because of his age, almost 60 at the time of the injury (now 65) he could have had approximately five productive years of labor available to him in the normal labor market. However, because of his age and resultant physical condition which is generally conceded here to be from at least 15% to Dr. Herz's 40% permanent partial disability coupled with the 'other factors' of N.R.S. 616.605 (2), his injury has had the net effect of totally depriving him (although not totally physically disabled) of about 5 years potential earnings. Even if he had made some effort to obtain gainful employment, (and he didn't apparently because his efforts at even menial tasks about the home—sweeping, painting, etc.—were sufficiently uncomfortable and painful to

discourage and did discourage him from looking for work) the Court is satisfied he could not have held or performed it with any reasonable degree of continuity and this even if it was strictly sedentary in nature. Any employer in this day and age would be greatly reluctant to regularly employ a man of that age with such an injury, limited experience and training for any type of work."

This court said in Crosby v. Nev. Indus. Comm'n, 73 Nev. 70, 77, 308 P.2d 60, 63 (1957):

"In an early annotation in 33 A.L.R. 115 under title 'Workmen's Compensation: Statutory phrase "incapacity to work" or the like, as including inability to obtain work following an injury,' are listed a great many cases in the American and English courts in which such terms as 'incapacity for work,' 'disability,' 'power to earn,' 'inability to procure work' etc. are defined and explained. The actual words used in the different statutory provisions do indeed vary, but the conclusions reached are clear irrespective of the particular words used in the statutes. This is illustrated by the remark contained in the opinion of Kuhnle v. Department of Labor and Industries, 15 Wash.2d 427, 120 P.2d 1003, 1006: 'The courts have found great difficulty in defining what is meant by incapacity to perform any work at any gainful occupation, and equivalent expressions used in workmen's compensation acts. They agree that they do not mean that the workman must be absolutely helpless or physically broken and wrecked for all purposes except merely to live. * * * *The purpose of the act is to insure against loss of wage earning capacity. A workman's wage earning capacity may be completely destroyed, though he still has some capacity to perform minor tasks. * * * *.' "

We are unable to say that the trial court's findings were not supported by substantial evidence. Nevada Indus. Comm'n v. Frosig, supra.

3. The judgment entered by the trial court was in the sum of $9,900 with interest at the rate of 7 percent per annum. Respondent asks that interest begin on May 15, 1961, the date the Commission offered respondent a $2,000 award. Respondent did not file his suit to recover in district court till October 29, 1963. We find no reason why the rule announced in NRS 17.130(2)[3] is not applicable in the instant case and

---

[3]NRS 17.130(2). "When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment shall draw interest at the rate of 7 percent per annum from the time of the entry of the judgment until satisfied."

that interest should run only from the date of entry of the trial court's award.

The judgment of the trial court is affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.