LAND & MARINE RENTAL COMPANY, Continental Insurance Company, and State of Alaska Worker's Compensation Board, Appellants/Cross-Appellees,

v.

Bobby R. RAWLS, Appellee/Cross-Appellant.

Nos. 6963, 7090.

Supreme Court of Alaska.

Jan. 27, 1984.

Robert C. Erwin, Erwin, Smith, Garnett, & Bendell, Anchorage, for appellants/cross-appellees.

James M. Morgan, Law Office of Robert M. Libbey, Anchorage, for appellee/cross-appellant.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and HANSON, Judge.*

OPINION

HANSON, Superior Court Judge.

I

In this worker's compensation case we consider whether certain medical reports meet the standard for substantial evidence such that the presumption of compensability can be dropped.[1]

Mr. Rawls was an employee of Land & Marine Rental Company when he sustained a serious injury to his left foot. Mr. Rawls testified before the Workers' Compensation Board [the "Board"] that on July 11, 1975, as he was attempting to roll a 2,000 pound pipe, set upon rollers, out from under a welding machine one end of the pipe left the rollers and bounced off the floor onto his left foot. The next thing he remembered was lying on his back against the floor.

Mr. Rawls received fractures of the third and fifth metatarsal and a laceration of the foot. He required a short leg cast, sutures and analgesics. His injuries steadily healed but he complained of soreness in the midtarsal area of the left foot. A plantar nodule was diagnosed and subsequently surgically removed. Mr. Rawls continued to experience pain and weakness in his foot. Near the end of 1976, Mr. Rawls began to experience pain in his left groin.

Thereafter, he also began to experience severe pain in his lower back.

These new signs of physical distress prompted Mr. Rawls to file an application for adjustment of claim. Land & Marine Rental's insurance carrier controverted the claim disputing the causal relationship of the original foot injury to Mr. Rawls' lower back and left groin pain.

Relying in particular on the medical reports of three doctors, the Board concluded "that these doctors have eliminated all reasonable possibilities that the back condition is related to the foot injury." Based upon this finding the Board denied Mr. Rawls' claim for compensation for his back and groin condition. On appeal, the superior court reversed, holding that Land & Marine Rental and its carrier had failed to overcome the presumption of compensability.[2]

This court long has held that in order to overcome the presumption created by AS 23.30.120(1) the employer or his carrier must present substantial evidence that the employee's claim was not compensable under the workers' compensation act. We have held that substantial evidence is such relevant evidence as a reasonable mind might accept in light of all the evidence as adequate to support a conclusion. *Kessick v. Alyeska Pipeline Service Co.*, 617 P.2d 755, 757 (Alaska 1980). The substantial evidence standard is met as well when taken together the evidence (1) affirmatively shows that the injury was not work-related, or (2) eliminates all reasonable possibilities that the injury was work-related. *Fireman's Fund American Insurance Cos. v. Gomes*, 544 P.2d 1013, 1016 (Alaska 1976).[3] Whatever type of evidence is offered, whether affirmative, negative or otherwise

---

* Hanson, Superior Court Judge, sitting by assignment made pursuant to Article IV, Section 11, of the Constitution of Alaska.

1. AS 23.30.120(1) provides:

   *Presumptions.* In a proceeding for the enforcement of a claim for compensation under this chapter it is presumed, in the absence of substantial evidence to the contrary, that
   (1) the claim comes within the provisions of this chapter; ....

2. The superior court referred to the "presumption that disability claims are valid." Although the manner of expression is not the clearest, it is apparent that the superior court was referring to the presumption of compensability.

3. The superior court used the conjunctive in describing the *Gomes* test; however, its application of a much more stringent test than what *Gomes* actually provides is not reversible error in view of the opinion which follows.

relevant, the crucial question after considering the whole record remains whether the quantum of evidence is substantial enough to support a conclusion in the contemplation of a reasonable mind. *Miller v. ITT Arctic Services*, 577 P.2d 1044, 1046 (Alaska 1978). The question whether the quantum of evidence is substantial is a legal question. *Id.*

■ We hold that Land & Marine Rental failed to overcome the presumption of compensability. The evidence in the record does not rise to the level of substantial evidence. In *Kessick v. Alyeska Pipeline Service Co.*, 617 P.2d 755 (Alaska 1980), we considered an evidentiary record very similar to the one presented here.

*Kessick* involved an employee who injured himself after he slipped and fell on ice. The employer's compensation carrier stopped benefit payments one year after the accident because it could not reconcile the treating physician's reports of continued temporary disability with the employee's participation in a hunting trip and, further, because it believed that the present disability was due to an intervening automobile accident.

The evidence before the Board consisted of the employee's medical records and his treating physician's testimony. The physician testified that the original fall was the cause of the employee's present disability. Despite this testimony, the Board concluded that the employee had returned to his pre-fall injury status. In reaching this determination the Board relied on the following factors: (1) the Board disregarded the medical testimony because it believed that the employee "exaggerated" his claim and that his doctor's diagnosis and treatment was based on this "exaggeration"; (2) all objective testing had been negative; (3) the employee's right knee jerk, which he had lost as a result of his fall, returned after six months; (4) after a year there no longer was any atrophy of the right leg; and (5) another doctor had estimated a recovery period of six to nine months. We were

unable to accept these factors as substantial evidence in support of the Board's decision.

In the present case, the evidence before the Board consisted of Mr. Rawls' medical records, his testimony and the testimony of one of several examining orthopedic surgeons, Dr. Linder.[4] Dr. Linder testified of his inability to isolate the specific cause of Mr. Rawls' pain but remained inclined to believe that the original accident that caused Mr. Rawls' foot injury also caused his current back troubles. Dr. Linder's opinion in part rested on Mr. Rawls' statements that he had failed to jump in time from out of the way of the falling pipe and his foot became trapped causing him to injure his back. Furthermore, in one of his medical reports, Dr. Linder wrote:

> I have no difficulty whatsoever at this point relating his back, hip and groin pain to his original injury. I feel it is quite likely that either his lumbar spine or his sacroiliac joint or hip could have been injured in this fall inasmuch as his lower leg was literally pinned under this enormous sewer pipe and it would certainly be one's normal reaction to push off away from this whether or not you are knocked down. I feel that this mechanism could very readily cause a sacroiliac joint injury or a lumbar spine injury.

The other medical reports which speak to the relationship between the foot injury and the back pains were made by Doctors Frost, Long, Wichman, and Benward. Each of these doctors have said at one time or another that Mr. Rawls' back troubles may be related to his foot injury.

The Board denied Mr. Rawls' benefits based on the following factors: (1) the Board decided to disregard Dr. Linder's testimony because it believed that his testimony was based on untrustworthy information, a conclusion reached after finding Mr. Rawls' testimony inconsistent with the history he had related to his physicians,

4. The testimony of Dr. Linder was taken at a deposition on behalf of Mr. Rawls.

including Dr. Linder,[5] and because at the hearing Mr. Rawls sat without agitation for approximately 90 minutes whereas Dr. Linder testified Mr. Rawls had difficulty remaining seated for more than 20 to 30 minutes; (2) the Board decided that the other doctors' medical reports eliminated all reasonable possibilities that the back condition was related to the foot injury; specifically, the Board concluded that the medical reports showed that Mr. Rawls' symptoms were not the result of (a) soft tissue inflammation; (b) a tight tendon; or (c) an irritable nerve; and (3) the Board also noted that there was no objective medical evidence linking the back condition and the foot injury.

■■■■ First, the Board's decision to disregard Dr. Linder's uncontradicted testimony is inconsistent with the general principle that any doubts concerning inconclusive medical testimony are to be resolved in favor of the claimant. *Kessick*, 617 P.2d at 758. Where medical testimony is given by a single doctor and other competent medical evidence is not presented to the Board, that doctor's testimony is considered, at worst, inconclusive. *Alaska Pacific Assurance Company v. Turner*, 611 P.2d 12, 15 n. 8 (Alaska 1980), *cited with approval in Kessick*, at 758. Therefore, any doubts which arise concerning such testimony are to be resolved in the claimant's favor. This general principle was violated by the Board in *Kessick* when the Board chose to disregard the only medical testimony presented to it based on the belief that Mr. Kessick had exaggerated his claim. Similarly, in the present case, the Board's decision to disregard the only medical testimony presented to it because it found difficulty in believing Mr. Rawls violates this general principle.

Moreover, even had the Board been free to disregard Dr. Linder's medical testimo-ny, its decision to do so would not imbue the record with substantial evidence that Mr. Rawls' condition is not work related. The issue of whether a subsequent injury is compensable if its connection with a prior work-related injury is highly tenuous and not directly supported by positive medical testimony was addressed in *Employers Commercial Union Company v. Libor*, 536 P.2d 129 (Alaska 1975). Our discussion of *Libor* in *Fireman's Fund American Insurance Companies v. Gomes*, 544 P.2d 1013 (Alaska 1976) is relevant to the present case:

> In *Libor*, the question was presented as to whether a work-related back injury was the cause of a subsequently discovered herniated disc which required surgery. One doctor testified that he could see no reason why there could not be a relationship between the original injury and the subsequent disability, but it would be impossible for him to make the causal connection. Another stated that in his opinion the original accident "cannot, with a reasonable degree of medical certainty, be said to be either the cause of or to have precipitated [the] herniated disc." That doctor, thus, could not find a basis for an opinion that the disability was work-related. Nevertheless, he gave no opinion that it was not work-related. Under those circumstances, we held that the presumption contained in AS 23.30.120(1), that the claim was within the act, was not overcome. The mere inability to state that the disability was work-related did not constitute substantive evidence.

*Id.*, at 1017.

Second, after reviewing the record, we conclude that the other doctors' medical reports do not tend to eliminate reasonable possibilities that Mr. Rawls' back condition was related to the foot injury. For exam-

---

5. Mr. Rawls testified before the Board that he had attempted to get out of the way of the falling pipe and, in the process, landed on the floor on his back. According to the Board this testimony was different from the history he had related to his doctors. The Board noted that he never mentioned his attempt to escape from the pipe before. Upon examination of the record, we fail to find the inconsistency. Dr. Linder clearly testified that Mr. Rawls had explained to him that as the pipe fell "he jumped back to try to get away from it, but it [Mr. Rawls' foot] was stuck...."

ple, Dr. Long speculated as to whether Mr. Rawls' complaints derived "from mechanical factors associated with the foot injury and possibly soft tissue inflamation about the left hamstring origin from the ischial tuberosity," and Dr. Benward diagnosed Mr. Rawls' trouble as musculoskeletal strain, secondary to favoring his left lower extremity.

Finally, the lack of objective signs of an injury in and of itself does not preclude the existence of such an injury. *Kessick v. Alyeska Pipeline Service Co.*, 617 P.2d at 758.

■ We conclude that the evidence in the record does not equal the substantial evidence which is necessary to overcome the presumption of compensability.

## II

On cross-appeal we are asked to decide whether interest shall be assessed for the late payment of an award, or any part thereof, under the Workers' Compensation Act.

Our workers' compensation law imposes a penalty equal to twenty percent of any amount due under an award and not paid within fourteen days after it is due. AS 23.30.155(f). The salutary purpose of this section is clear. It is an incentive to employers to make prompt and timely compensation owing to employees. The importance to the worker, whose means of support is more often than not composed mainly of his wages, of receiving compensation without delay cannot be overemphasized. The injured worker, depending on his circumstances, typically cannot afford time away from the job without periodic and prompt compensation.

The Act does not expressly provide for interest. In view of its purpose, the inference that such omission is equal to an exclusion cannot be made. Such a rigid view does not accord with the spirit of our workers' compensation law. On the other hand, great reason exists in favor of extending the law to provide interest.

This court recognizes the economic fact that money awarded for any reason is worth less the later it is received. *Farnsworth v. Steiner*, 638 P.2d 181, 184 (Alaska 1981). In *Farnsworth*, we specifically pointed out that the principal that judgment creditors are entitled to the time value of the compensation for their injuries has been recognized by this court in all civil cases. A system of resolving work-related injuries "in the most efficient, most dignified, and most certain form," *Gordon v. Burgess Construction Company*, 425 P.2d 602, 605 (Alaska 1967) (quoting 1 Larson, Workmen's Compensation Law § 2.20, at 5 (1966)), must recognize the time value of money. If it runs contrary to such a system should we allow an injured worker to suffer the loss of money at a time when he needs it most.

Allowing interest also complements our workers' compensation law. At present the only visible incentive to the employer to make compensation payments within fourteen days after it is due is the risk of a twenty percent penalty. However, for fourteen days there is no incentive to release the money owing the employee. In fact, it would serve the employer's or the carrier's best interest to hold the money as long as possible in order to continue collecting a favorable rate of return on it or in order to continue to have the use of the money without the cost of hiring it. By allowing interest the motivations to retain money owing the employee beyond the time it should have been paid over to the worker become less compelling.

In addition, the prevailing modern view clearly supports the assessment of interest with respect to workers' compensation awards. A substantial majority of the jurisdictions have adopted the practice.[6] The

---

6. In six states the highest court has held interest applicable to worker's compensation awards. *Parker v. Brinson Construction Co.*, 78 So.2d 873 (Fla.1955); *Chicago & Interurban Traction Co. v. Industrial Board of Illinois*, 282 Ill. 230, 118 N.E. 464 (1917); *Goodnite v. Farm Equipment Co.*, 234 Miss. 342, 106 So.2d 383 (1958); *Hanson v. North Dakota Workmen's Compensation Bureau*, 63 N.D. 479, 248 N.W. 680 (1933); *Campbell v. Walsh-Kaiser Co.*, 78 R.I. 290, 81 A.2d 684

federal courts have likewise approved the practice of awarding interest under the analogous Federal Longshoremen's and Harbor Workers' Compensation Act.[7] Today we join those states which recognize the workers' right to interest when compensation payments are not promptly and timely made.[8]

█ We hold that a workers' compensation award, or any part thereof, shall accrue lawful interest, as allowed under AS 45.45.010, which provides a rate of interest of 10.5 percent a year and no more on money after it is due, from the date it should have been paid.

The judgment of the superior court reversing the decision of the Alaska Workers' Compensation Board is AFFIRMED. Such part of the judgment standing in affirmance of the Board's decision is REVERSED and REMANDED with directions to further remand to the Board for proceedings in accordance with this opinion.

MOORE, J., not participating.

---

(1951); *Norman v. American Woolen Co.,* 117 Vt. 28, 84 A.2d 125 (1951). *Nevada Industrial Comm'n. v. Strange,* 84 Nev. 153, 437 P.2d 873 (1968), is inapposite. *Strange* permitted interest pursuant to the general interest statute to be added to an award based upon an action filed in the district court. The Nevada Supreme Court treated the action as an original proceeding against the Industrial Commission which earlier had awarded the claimant substantially less than the district court award. The Nevada legislature subsequently enacted Nev.Rev.Stat. § 616.543 (1981) which provides that judicial proceedings for compensation are limited to judicial review of decisions by Industrial Commission appeal officers. Consequently, it is not clear that the Nevada courts would continue to award interest.

Moreover, twenty-seven states have legislation allowing interest. Ark.Stat.Ann. § 81–1319(g) (1976); Cal.Lab.Code § 5800 (West 1971); Colo. Rev.Stat. § 8–52–109 (1973); Conn.Gen.Stat. Ann. § 31–300 (West Supp.1983–84); Del.Rev. Code Ann. tit. 19, § 2350 (1974); Ga.Code Ann. § 114–718 (Supp.1982); Idaho Code § 72–734 (Supp.1983); Iowa Code Ann. § 85.30 (West Supp.1983–84); Kan.Stat.Ann. § 44–512b (1981); Ky.Rev.Stat. § 342.040 (1983); Me.Rev. Stat.Ann. tit. 39, § 72 (Supp.1982–83); Md.Ann. Code art. 101, § 56 (1979); Mass.Gen.Laws Ann. ch. 152, § 50 (West Supp.1983–84); Mich.Comp. Laws Ann. § 418.801 (Supp.1983–84); Minn. Stat.Ann. § 176.221 (West Supp.1983); Mo.Ann. Stat. § 287.160 (Vernon Supp.1982); N.H.Rev. Stat.Ann. § 281:37–a (Supp.1981); N.J.Stat.Ann. § 34:15–28 (West 1959); N.Y.Work.Comp.Law §§ 20, 24 (McKinney 1965), § 221 (McKinney Supp.1982–83); N.C.Gen.Stat. § 97–86.2 (Supp. 1981); Okla.Stat.Ann. tit. 85 § 42 (West Supp. 1982–83); Pa.Stat.Ann. tit. § 77, 717.1 (Purdon Supp.1983–84); Tex.Civ.Stat.Ann. art. 8306a (Vernon 1967); Utah Code Ann. § 35–1–78 (Supp.1981); Va.Code § 65.1–98.1 (Supp.1983); W.Va.Code § 23–4–16a (1981); Wis.Stat.Ann. § 102.22 (West Supp.1982–83).

7. *See Newport News Shipbuilding and Dry Dock Co. v. Graham,* 573 F.2d 167, 171 (4th Cir.), *cert. denied,* 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); *Strachan Shipping Co. v. Wedemeyer,* 452 F.2d 1225 (5th Cir.1971), *cert. denied,* 406 U.S. 958, 92 S.Ct. 2060, 32 L.Ed.2d 344 (1972); *Quick v. Martin,* 397 F.2d 644, 648 (D.C.Cir. 1968); *Cunnyngham v. Donovan,* 304 F.Supp. 612 (E.D.La.1969).

8. Our decision might well be different if the purpose of the penalty provision in AS 23.30.-155(f) was in part to provide compensation for lost use of the money due to claimants. In such a situation an award of prejudgment interest coupled with the penalty might constitute an impermissible double recovery. However, we read AS 23.30.155(f) as providing an incentive to employers to make prompt payment of compensation owed to employees, and as a punishment to employers who do not do so, and not as a mechanism to provide compensation for lost use of money owed. This court has elsewhere distinguished between interest and penalty provisions, concluding that interest is "non-pejorative" and thus may be awarded where a penalty is unwarranted. *See, North Slope Borough v. Sohio Petroleum Corp.,* 585 P.2d 534, 546 (Alaska 1978).