Morris GREEN, Appellant/Cross–Appellee,

v.

KAKE TRIBAL CORP. and Alaska Timber Insurance Exchange, Appellees/Cross–Appellants,

and

Alaska Workers' Compensation Board, Appellee.

Nos. S–3829, S–3870.

Supreme Court of Alaska.

Aug. 30, 1991.

Terry J. Barnett, Seattle, for Morris Green.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for Kake Tribal Corp. and Alaska Timber Ins. Exchange.

No appearance for Workers' Compensation Bd.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This case involves an appeal by a worker from a decision of the Alaska Workers' Compensation Board, and a cross-appeal by his employer and its insurance company. We affirm.

## I

Morris Green was severely injured on June 21, 1983, in an accident related to his employment by Kake Tribal Corporation. The parties stipulated on November 30, 1987, that Green was entitled to permanent total disability compensation. This dispute arises because of a disharmony between the state workers' compensation scheme and the federal Social Security scheme, which resulted in a shell game of entitlements, offsets, and actual payments.

By both federal[1] and state statute,[2] Green's disability entitlements from all sources cannot exceed 80 percent of his preinjury earnings. His preinjury average weekly wage (AWW) for the purpose of workers' compensation was determined to be $416.36, 80 percent of which is $333.09. If his combined workers' compensation and social security *entitlements* exceed this maximum entitlement, the workers' compensation insurer can seek an offset in the amount of the difference between the total entitlement and the maximum entitlement. Until the insurer seeks the offset, however, the Social Security Administration (SSA) takes its own offset. The result is that the injured employee does not get more than the limit, one way or another.

As a result of the injury, Kake's insurer, Alaska Timber Insurance Exchange (ATIE), began paying Green $277.59 per week. As of December 1, 1983, he was entitled to a total of $219.12 per week in Social Security benefits.[3] Thus, his total entitlement as of December 1 was $496.71 per week, which exceeded his maximum allowable entitlement by $163.62. The SSA was aware of this fact and consequently only paid Green $55.38 per week—that is, they automatically took an offset so that Green would not be overpaid.[4] Thus, Green was receiving exactly that to which he was entitled. As between ATIE and SSA, ATIE was paying more than it had to, while SSA was paying less.

In February 1987 ATIE petitioned the Alaska Workers' Compensation Board for an offset of $163.62 per week, retroactive to December 1, 1983. Although Green did not deny that ATIE was entitled to some offset, he vigorously contested the inclusion of his daughter's social security entitlement in calculating the amount of the offset. Green apparently feared that, even if ATIE received an offset credit based on the daughter's entitlement, he would not be reimbursed by SSA.[5] He also argued that if SSA did refund the withholdings, the refund would belong exclusively to his daughter.

The Board rejected these arguments and allowed the requested offset in a Decision and Order issued June 10, 1988. The effect of this decision was to create an offset credit from past payments of over $40,000. The Board directed that ATIE could recoup the credit by withholding 20 percent of each future payment until the total credit was recovered, which would take over thirty-three years. The Board denied ATIE's request for statutory interest of 10.5 percent on the outstanding balance. Finally, the Board ordered Green to inform ATIE if he received a lump sum adjustment from SSA for the offset it had already taken.

Green did in fact receive a lump sum payment of $36,561.[6] ATIE subsequently

1. 42 U.S.C. § 424a(a) (1988).

2. AS 23.30.225(b).

3. The entitlement was actually calculated as $633 per *month* for Green and $316.50 per *month* for his dependent daughter. We have converted the monthly figure to a weekly figure to make it more readily comparable with the workers' compensation payments.

4. The payments were a portion of his entitlement. The Social Security Administration made no payments at all on his daughter's entitlement.

5. This fear in fact proved unfounded, as SSA refunded all of its withholdings.

6. Of this amount, $19,150 was considered reimbursement for sums withheld from his payments, and $17,411 for sums withheld from his daughter's payments. The Social Security lump sum is less than the total recoupment of $40,063.99 awarded to ATIE, apparently because the "average current earnings" figure used by SSA to calculate entitlements is slightly different than the "average weekly wage" used under Alaska law. *See* Appellee's Brief at 13 n. 5.

petitioned the Board to modify its order and allow ATIE to recoup its offset by withholding 100 percent of its payments until it had recovered the entire amount, a process that would last approximately six and a half years. Green argued that the law creates a presumption that withholdings to recover overpayments will be limited to 20 percent of future payments. The Board found "no legislative history or other authority" to support that position, insofar as the plain language of the statute authorizes the Board to allow higher withholding rates.[7]

In a Decision and Order dated January 10, 1989, the Board granted the modification. Its reasoning centered on the fact that Green was now in possession of a substantial overpayment—the SSA lump sum—which could be used to pay off ATIE immediately if Green desired to "reinstate" his compensation benefits. The Board rejected Green's assertion that ATIE's neglect caused the delay in obtaining the offset, finding instead that Green was primarily responsible.[8]

Green appealed the modification to the superior court; ATIE had already appealed from the Board's earlier denial of statutory interest on the offset. The appeals were consolidated, and the superior court denied both in a Memorandum Decision and Order, dated February 9, 1990. The two parties have pursued their respective appeals to this court.

## II

At this point there is no dispute as to whether ATIE is entitled to an offset cred-

it, nor is there a dispute as to the amount of the offset credit. The question involved in Green's appeal is whether ATIE should recoup its overpayment in about six years or in about thirty-three years. The question in ATIE's cross-appeal is whether ATIE should be entitled to interest on the amount of the SSA lump sum received by Green.

### A

■ The essence of Green's appeal is that the Board erred in authorizing ATIE to withhold 100 percent of Green's weekly workers' compensation payments until such time as ATIE's entire overpayment has been recovered, which will be over six years. A brief consideration of the economic reality of the situation demonstrates why this argument is meritless.

As noted above, before the offset ordered in the Board's June 10 Decision, Green received exactly what he was entitled to receive. ATIE, however, paid more than required, SSA paid less. Although the most sensible solution would have been for SSA to reimburse ATIE directly, the law does not provide for such a straightforward remedy. The Board initially authorized ATIE to recover its overpayments over the next thirty-three years *from Green*. SSA then refunded its underpayments in a lump sum *to Green*. Green is thus the middleman in what essentially is a settling of accounts between SSA and ATIE.

Treating Green's receipt of the lump sum payment as a change in conditions,[9] the

---

**7.** AS 23.30.155(j) provides:

If any employer has made advance payments or overpayments of compensation, the employer is entitled to be reimbursed by withholding up to 20 percent out of each unpaid installment or installments of compensation due. More than 20 percent of unpaid installments of compensation due may be withheld from an employee only on approval of the board.

**8.** Both parties devote some energy before this court in debating about who should bear the blame for the delay. As is clear from the discussion below, we do not find the issue particularly relevant to deciding this case.

The superior court concluded as a matter of law that an employer could receive interest on an overpayment when there is substantial evidence that the worker misused the system. The court then concluded as a matter of fact that Green's conduct in this case was negligent rather than willful. As ATIE has not pursued this theory on its cross-appeal, we offer no view on either the legal or factual holding.

**9.** AS 23.30.130(a) provides:

Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions, ... the board may ... review a compensation case ... [and] issue a new compensation order which terminates,

Board modified its previous order, increasing ATIE's withholding rate to 100 percent. This modification would allow ATIE to recover its overpayments over the next six years; the Board felt it had no legal means of allowing a quicker recovery.[10] Green is still in an enviable position: he gets money from SSA today, but only need dole it out to ATIE over the next six years. Or put another way, Green effectively has a six-year, interest-free loan of over $36,000.[11]

The complaint that Green will receive "zero compensation," or "reduced compensation," over the next six years is without economic foundation: he has already received his compensation for the next six years. Yet, this complaint underpins his entire appeal. For example, in arguing that the Board's January 10 order violates public policy, he asserts that "the order defeated the purpose of the Act by suspending compensation to an admittedly disabled worker, to benefit parties the Act provides should be obligated, not benefitted." Appellant's Brief at 38. This argument would be persuasive if the underlying premise—that Green's compensation was suspended rather than advanced—were true. Because that premise is not true, the argument is irrelevant.

Similarly, in arguing that the Workers' Compensation Act presumptively restricts the rate of recovery of overpayments to 20 percent withholdings, Green asserts that "*securing* compensation comes before *limiting* it." Appellant's Brief at 32 (emphasis in original). On its face, this argument certainly has merit, but no relevance to this case. Green has already *secured* the equivalent of his compensation for the next six years; the only thing being limited is how much of a time value bonus he gets in addition to this compensation.

Green argued before the Board that no overpayment was made, but the Board summarily rejected that position. He now implicitly accepts that an overpayment was made, as he merely asks this court to reinstate the original recoupment schedule, which would allow ATIE to recover its money over the next thirty-three years. Green does, however, subtly attempt to reintroduce the concept that the lump sum payment is not an "overpayment":

> Regarding the Board's second finding, the lump sums were *not* "the funds which we have ordered [Kake/ATIE] to recoup." Kake/ATIE's legal right was to withhold, from their own funds, part of the money they would owe Mr. Green in the future. The SSD lump sums were federal money, owed to Mr. Green and his daughter under federal law. Kake/ATIE had no legal right [to] "recoup" from money they had not paid. Nor could they recoup from someone—the daughter—they had not paid.

Appellant's Brief at 18 (emphasis in original). The conclusion which Green would have this court draw is that the lump sum was no more than that to which he was entitled under federal law, and that ATIE's withholdings are from payments to which he will be entitled under state law. This line of reasoning suggests that the Board is indeed burdening Green's entitlements, a suggestion that is in fact an illusion in light of the economic reality of the situation. The fallacy giving rise to this illusion, of course, is to consider the lump sum an entitlement without simultaneously recognizing prior ATIE payments as overpayments.

Green also argues that considering the portion of the lump sum earmarked for the daughter's entitlements was error on the Board's part. He maintains that federal law prohibits him from paying over her entitlement to ATIE, or from doing anything with it other than paying for the daughter's food, shelter, and personal comfort. This argument is inconsistent with his acceptance of the total offset due to

continues, reinstates, increases, or decreases the compensation, or award compensation.

10. *See supra* note 7 (quoting AS 23.30.155(j)). No provision is made for recovery other than through withholding all or part of future payments.

11. The bonus he receives is substantial. The present value of the stream of payments he is forgoing is around $28,000, assuming for argument's sake an annual discount rate of 10.5 percent. Thus, he clears about $8,000 from the disharmony between state and federal law.

ATIE, which took into account Social Security entitlements earmarked for the daughter. Although Green initially argued before the Board that the daughter's entitlements should not be taken into account, the Board held otherwise. Green did not appeal that holding to the superior court, and he may not revive his original argument now.

We are especially willing to recognize Green's waiver of an argument in regard to his daughter's entitlement in light of the fact that the SSA originally withheld the entitlement on the presumption that it was subject to the statutory maximum, and apparently only refunded it because it was part of the offset awarded to ATIE. Green's seizing upon the SSA's distinction between his and his daughter's entitlements is another way of slipping in the notion that there has been no overpayment. The fact is that Green already received all the funds the laws allow him, from which he was obligated to maintain his daughter (and himself). The lump sum, whether designated as part of his entitlement or part of hers, is over and above that which he and she should have in their collective pocket at the end of the day.

Section 155(j) of the Workers' Compensation Act clearly envisions that the Board may under some circumstances approve the withholding of more than 20 percent of unpaid installments in order for an employer to recoup an overpayment. At some point we may need to involve ourselves in the definition of those circumstances. But where, as here, the worker stands to come out ahead even with 100 percent withholding, there is no reason to question the Board's judgment.

### B

■ ATIE originally asked the Board to allow it interest of 10.5 percent on the entire amount of its offset credit. The Board refused. Before this court, ATIE merely asks for interest on so much of its credit as was ultimately refunded to Green by SSA (although it has not abjured its right to recover the entire amount of the credit). Both parties agree that the question is one of law. *See Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979) (court will adopt "rule of law that is most persuasive in light of precedent, reason, and policy").

ATIE argues that this court's holding in *Land & Marine Rental Co. v. Rawls*, 686 P.2d 1187 (Alaska 1984), which awarded interest on overdue compensation payments to workers, should be extended to cases where the worker owes money to the insurer. In support of this argument, ATIE identifies three rationales underlying the *Rawls* decision: (a) the time value of money; (b) the creation of an incentive for timely payments; and (c) the prevalence of such a practice in other jurisdictions. Although ATIE admits that no other state allows interest on employers' overpayment credits, it asserts that the other two *Rawls* reasons apply as strongly to this case as to a situation where the employer/insurer owes the employee.

ATIE notes that simple statutory interest of 10.5 percent on Green's lump sum payment would be $129,371.27 over thirty-three years and $25,720.70 over six years. ATIE argues that the time value rationale of *Rawls* applies as much to employers as to employees. ATIE also argues that the creation of a recoupment mechanism "indicates that one of the purposes of the Act was to make sure that employees did not receive more in benefits than the amount to which they were entitled." Cross–Appellant's Brief at 14. Allowing Green the time value of his lump sum payment, ATIE suggests, would "thwart" this purpose of the Act. ATIE further asserts that the intent of the twin offset provisions in federal and state law is to prevent double recovery by the employee and to give the benefit of the offset to the employer. If ATIE is not allowed interest on the lump sum, Green will end up with a "partial 'double recovery,'" and ATIE will not enjoy the full benefit of the offset.[12]

12. ATIE also briefly argues that the equities favor an award of interest. By its own terms, this argument turns on a breach of duty by Green, which ATIE does not even allege, much

ATIE's argument ignores a crucial aspect of our decision in *Rawls*—the right to interest only attaches once a payment is late:

> We hold that a workers' compensation award, or any part thereof, shall accrue lawful interest, as allowed under AS 45.-45.010, which provides a rate of interest of 10.5 percent a year and no more on money after it is due, *from the date it should have been paid.*

*Id.* at 1192 (emphasis added). Without getting into a metaphysical argument as to whether the lump sum money *is* ATIE's money, the statutory mechanism for ATIE's recovery of its credit is withholding. *See* AS 23.30.155(j). Thus, the money is not *due* to ATIE until such time as each installment is payable, just as a worker is not entitled to his compensation payments until such time as they are due.

In this case the worker does receive a time value bonus by getting the lump sum today instead of compensation payments spread out over a number of years.[13] If ATIE's position were adopted, however, the worker would not only lose the time value bonus, he would also lose some of his basic entitlement. Faced with an award of 10.5 percent interest on the lump sum amount, the easiest thing for the employee to do— and the result that ATIE forthrightly seeks—is to hand over the lump sum to the insurer. Were Green to do that in this case, ATIE would still have the right to recoup over $3,000 from future payments, which represents the gap between SSA's method of calculation and Alaska's. The result would be that Green receives less than his entitlement of 80 percent of his average weekly wage. In fact, if ATIE continued to recoup that difference through 100 percent withholding, Green would receive no workers' compensation payments for about six months, even though he would no longer be in possession of any overpayment whatsoever.

In this context, Green's arguments about basic fairness and public policy would carry tremendous weight, weight they do not carry so long as he enjoys a lump sum while ATIE waits for recoupment. He, rather than the insurer, would be bearing the burden for the imperfect fit between the federal and state schemes. Such a shifting of burden from insurer to worker goes against the grain of the beneficent purposes of the workers' compensation scheme as well as this court's extensive workers' compensation jurisprudence. *See, e.g., Hood v. State*, 574 P.2d 811, 813 & n. 6 (Alaska 1978).

Nothing in the statute or case law suggests to us that the worker should suffer because of these systemic imperfections. The bonus Green receives inheres in the system as currently structured by the legislature and is not clearly counter to the general purpose of the Workers' Compensation Act. Whether the bonus overcompensates disabled workers and, if so, what to do about it, are questions firmly within the province of the legislature.

AFFIRMED.

---

less attempt to prove. ATIE largely disavows this argument in its reply brief.

**13.** The figure, however, is nowhere near the amount of $25,720.70 calculated by ATIE. That figure—simple interest on $36,561 for 6.7 years—does not take into account the fact that Green will have to expend the principal to re-

place his forgone compensation payments from ATIE. Probably the most sensible comparison is of the present value of the forgone payments with the present value of the lump sum. As noted above, assuming an annual discount rate of 10.5 percent, Green's bonus is about $8,000.