**UNDERWATER CONSTRUCTION, INC.**
and Industrial Indemnity Company
of Alaska, Appellants,

v.

**William M. SHIRLEY and Alaska
Workers' Compensation
Board, Appellees.**

No. S–5388.

Supreme Court of Alaska.

Nov. 4, 1994.

Mark L. Figura, Rose & Figura, Anchorage, for appellants.

Chancy Croft, Chancy Croft Law Office, Anchorage, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This appeal requires us to interpret AS 23.30.225(b), which allows an employer to reduce workers' compensation benefit payments to an injured employee if that employee's combined state and federal social security disability benefits exceed 80% of the employee's "average weekly wages." We hold that "average weekly wages" in AS 23.30.225(b) is synonymous with "gross weekly earnings" in AS 23.30.220(a)(1).

1. Underwater Construction and its workers' compensation insurance carrier, Industrial Indemnity Company of Alaska, are Referred to collectively as "Underwater Construction" or "UC."

2. AS 23.30.220(a)(1) provides:
   [T]he gross weekly earnings are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury; ....
   This section of the Act was recently struck down in *Gilmore v. Alaska Workers' Compensation Board*, 882 P.2d 922 (Alaska 1994).

3. 42 U.S.C. § 424a(a) (1988) provides in part:
   [A]n individual's *average current earnings* means the largest of (A) the average monthly wage ... used for purposes of computing his benefits under section 423 of this title, (B) one-sixtieth of the total of his wages and self-employment income ... for the five consecutive calendar years after 1950 for which such wages and self-employment income were high-

## I. FACTUAL AND PROCEDURAL BACKGROUND

William W. Shirley was injured while employed by Underwater Construction, Inc. (UC)[1] in August 1989. He is permanently and totally disabled. He has received benefits from UC since the date of injury, pursuant to the Alaska Workers' Compensation Act (Act), in the amount of $449.37 per week based on Alaska gross weekly earnings (GWE)[2] of $697.61 per week. In February 1990 Shirley became eligible for federal social security disability benefits in the amount of $213.27 per week, based on average current earnings (ACE)[3] of $4014 per month.[4] After UC received notice of Shirley's social security benefits, it petitioned the Alaska Workers' Compensation Board (Board) for an offset of approximately $104 per week.[5] Shirley did not oppose the petition.

The Board reasoned that AS 23.30.225(b) and 42 U.S.C. § 424a should be read *in pari materia.* Alaska Statute 23.30.225(b) provides:

> When it is determined that, in accordance with 42 U.S.C. 401–433, periodic disability benefits are payable ... for an injury for which a claim has been filed under this chapter, weekly disability benefits payable under this chapter shall be offset by an amount by which the sum of (1) weekly benefits to which the employee is entitled under 42 U.S.C. 401–433, and (2)

est, or (C) one-twelfth of the total of his wages and self-employment income ... for the calendar year in which he had the highest such wages and income during the period consisting of the calendar year in which he became disabled ... and the five years preceding that year.
(Emphasis added).

4. Shirley receives social security disability benefits of $924.20 per month or $213.27 per week ($924.20 × 12/52). *See* 42 U.S.C.A. §§ 415, 423(a)(2) (1991) (regarding computation of disability benefits).

5. Eighty percent of Shirley's GWE, calculated under AS 23.30.225(b), is $558.09 per week (0.80 × $697.61). Because the sum of Shirley's Alaska workers' compensation benefits ($449.37 per week) and his federal social security disability benefits ($213.27 per week) is $662.64 per week, UC argues that it is entitled to an offset of $104.55 per week ($662.64—$558.09).

weekly disability benefits to which the employee would otherwise be entitled under this chapter, exceeds 80 per cent of the employee's *average weekly wages* at the time of injury.

(Emphasis added). 42 U.S.C. § 424a provides in part:

If ... an individual ...

(1) ... is entitled to benefits under section 423 of this title, and

(2) ... is entitled ... [to] ...

(A) periodic benefits on account of [such individual's] total or partial disability (whether or not permanent) under a workmen's compensation law or plan ...

. . . .

the total of his benefits under section 423 ... shall be reduced ... by the amount by which the sum of

(3) ... benefits under section[ ] 423 ..., and

(4) ... such periodic benefits payable ... under such [state] laws ... exceeds *the higher of*: ...

(5) 80 per centum of his "average current earnings".... [6]

(Emphasis added). The Board concluded that "average weekly wages" (AWW) meant *the greater of* "gross weekly earnings" *or* federal "average current earnings." With a higher benefit cap, in this case ACE, fewer benefits are subject to offset. The Board thus sought to minimize the offset in favor of the employee. Although Shirley's combined benefits ($662.64 per week) exceeded 80% of GWE ($558.09 per week), they did not exceed 80% of ACE ($741.04 per week).[7] Accordingly, the Board denied the petition for offset.[8]

UC appealed the ruling to the superior court. AS 22.10.020(d); Alaska R.App.P. 602(a)(2). Citing the inequitable result where computation of the cap per GWE gives an injured employee less benefits than computation per ACE, the superior court affirmed the Board's decision.

On appeal to this court, AS 22.05.010(c); Alaska R.App.P. 202(a), UC argues that the correct interpretation of AS 23.30.225(b) is independent of federal law: "average weekly wages" means *only* "gross weekly earnings."

## II. *DISCUSSION*

### A. STANDARD OF REVIEW

■ The superior court acted as an intermediate appellate court. Therefore this court need not give deference to its decision. *National Bank of Alaska v. State, Dep't of Revenue*, 642 P.2d 811, 816 (Alaska 1982).

In *Handley v. State*, 838 P.2d 1231, 1233 (Alaska 1992), we addressed the standard of review for administrative decisions: "The 'reasonable basis' test is used for questions of law involving agency expertise. The 'substitution-of-judgment' test is used for questions of law where no expertise is involved." UC argues that because the sole issue concerns a question of statutory interpretation, this court should use the substitution-of-judgment standard. We agree.

This case does not involve fundamental policy considerations which require the expertise of the Board. Anchorage panels have applied 80% of *the greater of* ACE *or* GWE as the cap on total disability benefits,[9] while Juneau panels have applied 80% of GWE as the cap.[10] Whichever its decision, the Board will not be making a policy decision requiring expertise, but will be applying the law ac-

---

**6.** 42 U.S.C. § 424a(d) provides that no federal offset will be taken if the state workers' compensation benefits are subject to reduction pursuant to state statute.

**7.** Shirley's ACE are $926.30 per week ($4014 × 12/52). Eighty percent of Shirley's weekly ACE is $741.04 per week (0.80 × $926.30).

**8.** Nonetheless, the Board noted that a panel in Juneau interpreted AS 23.30.225(b) only in terms of GWE for purposes of determining offset calculations. *See infra* note 10.

**9.** *See Henry v. Enserch Alaska Constr.*, No. 90–0059 (Alaska Workers' Compensation Board [AWCB], March 30, 1990); *Thornton v. Veco*, 1987 WL 95592 (AWCB, November 27, 1987); *Stanley v. Wright–Schuchart*, No. 82–0039 (AWCB, February 19, 1982), *aff'd*, No. 3AN–82–2170 Civ. (Alaska Super., May 10, 1983).

**10.** *See Lile v. Long Island Dev.*, No. 90–0213 (AWCB, August 30, 1990); *Milner v. Hull Cutting Co.*, No. 88–0277 (AWCB, October 26, 1988).

cording to two approaches that are separately consistent, but conflict with each other. Accordingly, we apply the substitution-of-judgment standard.[11]

### B. ALASKA STATUTE 23.30.225(b) IS AMBIGUOUS

■ UC argues that the plain meaning of AS 23.30.225(b) directs that the Alaska offset be calculated with regard to GWE; in other words, the term "gross weekly earnings" is synonymous with the term "average weekly wages."[12] *See Fairbanks N. Star Borough Sch. Dist. v. NEA–Alaska, Inc.*, 817 P.2d 923, 926 n. 4 (Alaska 1991) (refusing to defer to agency interpretation at odds with plain meaning of statute).

Shirley responds that the statute is ambiguous. We agree. "Average weekly wages" is not defined and AS 23.30.225(b) does not mention, quote, or refer directly to either ACE or GWE.[13]

### C. INTERPRETING AS 23.30.225(b)

#### 1. *Green v. Kake Tribal Corp.*

*Green v. Kake Tribal Corp.*, 816 P.2d 1363 (Alaska 1991),[14] is not dispositive of this case. In *Green* we noted the "imperfect fit between the federal and state schemes." *Id.* at 1368. Indeed, the Social Security Administration's calculation of the offset (based on ACE) in *Green* differed from that of the employer (based on AWW). *Id.* at 1364 n. 6, 1368. Nonetheless, *Green* addressed the issue *how* an overpayment can be recouped rather than

the *size* of an overpayment; the correctness of the offset determinations was never before the court.

#### 2. *Legislative Intent*

■ In interpreting an ambiguous statute we look to legislative intent. *North Slope Borough v. SOHIO Petroleum Corp.*, 585 P.2d 534, 540 (Alaska 1978).

■ The term "average weekly wages" was the basis for computing compensation until 1983. Former section 220 provided in part:

[T]he *average weekly wage* of the injured employee at the time of the injury is the basis for computing compensation and is determined as follows:

. . . .

(2) the *average weekly wage* is that most favorable to the employee calculated by dividing 52 into the total wages earned, including self-employment, in any one of the three calendar years immediately preceding the injury;. . . .

AS 23.30.220(2) (1977) (emphasis added). In 1983 the term was replaced by "gross weekly earnings." Ch. 70, § 12, SLA 1983. Amended section 220 provides in part:

(a) The spendable weekly wage of an injured employee at the time of injury is the basis for computing compensation. It is the employee's *gross weekly earnings* minus payroll tax deductions. The *gross*

---

**11.** This court has occasionally deferred to an agency's determination "where the agency interpretation is longstanding." *Fairbanks N. Star Borough Sch. Dist. v. NEA–Alaska, Inc.*, 817 P.2d 923, 925 (Alaska 1991). However, the inconsistent application of AS 23.30.225(b) by the Anchorage and Juneau panels demonstrates that there is no "longstanding" interpretation worthy of deference.

**12.** UC cites *Homer Electric Ass'n v. Towsley*, 841 P.2d 1042, 1043–44 (Alaska 1992), for the proposition that statutory terms may be "construed in accordance with their common usage." However, UC has not presented evidence that GWE is commonly used in place of AWW.

**13.** Furthermore, the fact that different panels of the Board have interpreted AS 23.30.225(b) differently is testament to the ambiguity of the stat-

ute. *See supra* notes 9, 10 and accompanying text.

**14.** Because Green, an injured worker, received Alaska workers' compensation benefits and federal social security disability benefits, the Social Security Administration (SSA) took an offset. Five years after the injury, the employer's insurer (ATIE) petitioned the Board for a retroactive offset of approximately $40,064. The Board (1) granted the offset, but limited ATIE's recoupment to 20% of its continuing payments to Green (a process which would take 33 years), and (2) ordered Green to inform ATIE if he received a lump-sum refund from SSA. *Green*, 816 P.2d at 1364. After Green received a payment of $36,561 from SSA, the Board granted ATIE's petition for a 100% recoupment (which would take only six years) and we affirmed the Board's decision. *Id.* at 1365.

*weekly earnings* shall be calculated as follows:

(1) the *gross weekly earnings* are computed by dividing by 100 the gross earnings of the employee in the two calendar years immediately preceding the injury;
. . . .

AS 23.30.220 (emphasis added). The statutes are very similar; both provide for a calculation of compensation based on *historical earning capacity*. The minor differences are that the amended statute: (1) looks backward for two instead of three years, and (2) yields a slightly higher weekly figure.[15] The major difference is in the percentage used to calculate the benefit. The amended statutes use a higher percentage (80%) of a lower number (spendable weekly wages or (earning capacity (GWE) minus payroll tax deductions)). AS 23.30.175–.185. The former statutes used a lower percentage (66⅔%) of a higher number (earning capacity (AWW) without tax deductions). AS 23.30.175–.190 (1979). This difference is not relevant to the instant case.

We hold that "average weekly wages" in AS 23.30.225(b) refers to the measure of historical earning capacity used to calculate compensation. Accordingly, it is the same as "gross weekly earnings" in AS 23.30.220(a)(1).[16] Notwithstanding the difference in language *between sections 225(b) and 220(a)(1)*, "average weekly wages" in AS 23.30.225(b) does *not* refer to the higher of a state historical earning capacity or ACE.[17]

Furthermore, there is no indication that the Alaska Legislature intended to maximize the injured employee's benefits. The general purpose of the bill under which AS 23.30.225(b) was enacted was to make benefits more affordable to *employers* in Alaska. In a letter to the Alaska Senate, Governor Jay S. Hammond stated

[t]he bill reduces the cost of benefits, with the general purpose of making benefits more affordable to the employers of the state. . . . [We believe that this bill] will have a major beneficial impact on rates of workmen's compensation insurance in Alaska.

1977 Senate Journal 203–04.

Shirley's argument that the legislature intended to follow 42 U.S.C. § 424a is unfounded. We agree with UC that "merely because both statutes include the 80% figure does not suggest that the remaining words of the Alaska statute should be ignored." Indeed, there is no reason for the legislature to have adopted two entirely different measures of earning capacity.[18] Finally, there is no evi-

---

**15.** The amended statute divides two years (104 weeks) earnings by 100 (104/100 = 1.04 or 104%). Given similar earnings, this amounts to a 4% increase over the amount that would be obtained under the former statute (52/52 = 1.00 or 100%).

**16.** The Board has on occasion reached the same conclusion. *Rogers v. Ketchikan Pulp Co.*, 1992 WL 471719, at 2 n. 5 (AWCB, November 17, 1992).

**17.** We adopt the following analysis of the Anchorage panel's decision in *Thornton:*

The 1983 amendment to AS 23.30.220, which removed the term "average weekly wages" from the section, created a semantic ambiguity in AS 23.30.225(b), which retains its reference to the average weekly wage. . . .

Based on our review of the legislative purpose for amending AS 23.30.220, as best we can discern it, we believe the legislature left the term "average weekly wages" in AS 23.30.225(b) by inadvertence. In every other section in which "average weekly wages" appeared, it was changed to "Spendable weekly wage" or "gross weekly earnings." §§ 2–3, 5–

13 chapter 70 SLA 1983 (now codified as AS 23.30.175, .180, .185, .190, .200, .210, .215, .220, .265(28)). We believe the question is thus whether we should construe "average weekly wages" in subsection 225(b) to mean "gross weekly earnings" or "spendable weekly wage."

We regard the average weekly wage under prior § 220 as an expression of the employee's gross earnings in a weekly unit. Under current § 220 the gross weekly earnings are the representation of the employee's gross earnings in a weekly unit. By contrast, the spendable weekly wage is the gross weekly earnings less payroll deductions. . . . We therefore conclude that "average weekly wages" in subsection 225(b) should be read as "gross weekly earnings."

1987 WL 95592, at *3–4.

**18.** If the legislature wished to adopt or incorporate 42 U.S.C. § 424a, it could have explicitly done so, as other states have. *See* Wisc.Stat.Ann. § 102.44(5)(a) (West 1988) (computing offset based on ACE); Fla.Stat.Ann. § 440.15(9)(a) (West 1991) (applying offset based on the *higher* of ACE or a state computation of earning capacity).

dence that the Alaska offset should *never* exceed the federal offset.[19]

Shirley argues that the legislature's failure to amend AS 23.30.225(b), notwithstanding past Board decisions, amounts to tacit approval of the Board's interpretation,[20] and that it is inconceivable that the Alaska legislature intended the result where an injured employee receives less total benefits because of a difference in calculation.[21] We find both arguments to be without merit.

### 3. *Statutory Construction*

Shirley argues that this court should construe AS 23.30.225(b) and 42 U.S.C. § 424a (1) *in pari materia,* and (2) so as to produce a harmonious whole. *Cf. Wien Air Alaska v. Arant,* 592 P.2d 352, 356 (Alaska 1979), *overruled on other grounds, Fairbanks N. Star Borough Sch. Dist. v. Crider,* 736 P.2d 770, 775 (Alaska 1987).

[5–7] We disagree with both aspects of Shirley's methodology. First, this court generally construes statutes *in pari materia* where two statutes were enacted at the same time, or deal with the same subject matter. *State v. Eluska,* 724 P.2d 514, 517 (Alaska 1986) (Compton, J., dissenting); *State v. Frazier,* 719 P.2d 261, 262 (Alaska 1986); *see*

*also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 51.01–.02 (5th ed. 1992). We construe state statutes *in pari materia* with federal statutes when the statutes deal with the same subject matter, and the state scheme relies upon the federal scheme. *See Morton v. Hammond,* 604 P.2d 1, 4 (Alaska 1979). As noted above, AS 23.30.220 does not rely upon the federal scheme, and our legislators expressly adopted a different measure for determining compensation. Therefore, although the two statutes involve the same general subject matter, the two statutes are not *in pari materia* and will not be construed together.

Second, a "harmonious whole" must be a single instrument. *See Wien Air,* 592 P.2d at 356 (harmonizing provisions of the Act); *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975) (harmonizing subsections of Alaska Rule of Civil Procedure 72). In this case the only law with which AS 23.30.225(b) must be harmonious is the Act itself, not a nationwide workers' compensation relief scheme.

### III. *CONCLUSION*

Alaska Statute 23.30.225(b) is ambiguous, but it is substantially different than 42

---

**19.** This is the practical result of the Board's interpretation. The Alaska legislature did contemplate that the Alaska offset could exceed the federal offset. Both AS 23.30.225(b) and 42 U.S.C. § 424a reduce compensation benefits where an injured employee receives social security disability benefits. AS 23.30.225(a) reduces workers' compensation benefits by one-half of federal retirement or survivors benefits. However, neither 42 U.S.C. § 424a nor any other federal provision provides a similar offset. Thus, a retiree may get less compensation under the Alaska scheme than he would get under the federal scheme. This non-congruence of AS 23.30.225 and 42 U.S.C. § 424a shows that the Alaska legislature contemplated that its offsets could exceed federal offsets, and did not attempt to mirror the federal provision. This is consistent with Professor Larson's observation that state "offset provisions vary widely in their scope and method of operation ... particular details may be controlled by express statutory language in an individual state statute." 4 Arthur Larson, *The Law of Workmen's Compensation* § 97.35(a), at 18–37 (1993).

**20.** The Alaska legislature has amended the Act four times since the Board's decision in *Stanley,*

which first noted the difference between the state and federal offsets. There is no evidence that the Alaska legislature was *aware* of any Board interpretation. In addition, given the inconsistent interpretations by the Anchorage and Juneau panels, see *supra* notes 9 & 10, it is unclear which interpretation would enjoy tacit approval. Finally, there is no support in Alaska law for the proposition that a legislature's failure to amend provisions signifies tacit approval of an agency's interpretation.

**21.** We have held that " 'to construe statutes so as to avoid results glaringly absurd, has long been a judicial function.' " *Sherman v. Holiday Constr. Co.,* 435 P.2d 16, 19 (Alaska 1967) (quoting *Armstrong Paint & Varnish Works v. Nu–Enamel Corp.,* 305 U.S. 315, 332–33, 59 S.Ct. 191, 200, 83 L.Ed. 195 (1938)). Nevertheless, Shirley fails to persuade us that an employee's receiving the lesser of two sums is "glaringly absurd" or beyond the legislature's conception. In enacting AS 23.30.225(b) the legislature clearly intended to reduce employer-paid benefits under the state scheme where federal assistance was available. Because the state offset has priority, the more social security an injured employee has accrued, the larger an *employer's* windfall will be.

**156**

U.S.C. § 424a. Because there is no indication that the Alaska legislature intended any similarity, AS 23.30.225(b) is to be interpreted without regard to 42 U.S.C. § 424a. Accordingly, "average weekly wages" as a benefit cap under AS 23.30.225(b) is synonymous with "gross weekly earnings" under AS 23.30.220, insofar as both terms represent a measure of historical earning capacity. We are not persuaded that this decision will be inequitable to employees who receive both state and federal disability benefits.

We REVERSE the decision of the superior court which affirmed the decision of the Alaska Workers' Compensation Board, and REMAND this case for determination of the compensation offset in accordance with this decision.